# UNITED STATES DISTRICT COURT
for the
Eastern District of Tennessee

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 1:22-mj- 89
4CH 1080n 5in1 XVR S/N: K3043HV190143, Currently )
Located at the Hamilton County Sheriff's Office, 6233 )
Dayton Blvd, Hixson, TN )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, attached and incorporated herein.

located in the ____Eastern____ District of ____Tennessee____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846. | Distribution / conspiracy to distribute a controlled substance |

The application is based on these facts:

See attached affidavit of Task Force Officer, Ayriel Novak, Drug Enforcement Administration.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ SANDOVAL
*Applicant's signature*

Ayriel Novak, DEA Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: March 24, 2022

/s/ Susan K. Lee
*Judge's signature*

City and state: Chattanooga, Tennessee

Hon. Susan K. Lee, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF 4CH 1080n 5in1 XVR S/N: K3043HV190143, CURRENTLY LOCATED AT HAMILTON COUNTY SHERIFF'S OFFICE, 6233 DAYTON BLVD, HIXSON, TN | Case No. 1:22-MJ-89<br><br>Filed Under Seal |

## ATTACHMENT A

1. The property to be searched is a 4CH 1080n 5in1 XVR S/N: K3043HV190143, hereinafter the "Device." The Device is currently located at the HAMILTON COUNTY SHERIFF'S OFFICE, 6233 DAYTON BLVD, HIXSON, TN.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF 4CH 1080n 5in1 XVR S/N: K3043HV190143, CURRENTLY LOCATED AT HAMILTON COUNTY SHERIFF'S OFFICE, 6233 DAYTON BLVD, HIXSON, TN | Case No. 1:22-MJ- 89<br><br>Filed Under Seal |

## ATTACHMENT B

1.  All records on the Device described in Attachment A that relate to violations of 21 U.S.C. Section 841 – Possession with intent to distribute a controlled substance, 21 U.S.C. Section 846 – Conspiracy to possess with intent to distribute a controlled substance, 18 U.S.C. Section 922 – Possession of a firearm by a convicted felon, and 18 U.S.C. Section 924 – Possession of a firearm in furtherance of a violent crime or drug trafficking crime, and involve **Henry Lee ESTILL** since December 1, 2021, including:

    a. identification of customers, associates, and related identifying information;

    b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. any information regarding Henry Lee ESTILL's schedule or travel from December 1, 2021, to the present;

1

2. Evidence of user attribution showing who used, had access to, or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, recordings, saved usernames and passwords, IP address, and storage database;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any video or photographic form.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF 4CH 1080n 5in1 XVR S/N: K3043HV190143, CURRENTLY LOCATED AT HAMILTON COUNTY SHERIFF'S OFFICE, 6233 DAYTON BLVD, HIXSON, TN | Case No. 1:22-MJ- 89<br><br>Filed Under Seal |

### AFFIDAVIT IN SUPPORT OF AN
### APPLICATION FOR A SEARCH WARRANT

I, Task Force Officer Ayriel Novak, with the Drug Enforcement Agency (DEA), being first duly sworn, hereby depose and state as follows:[1]

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a law enforcement officer as defined by Tenn. Code Ann. 39-11-106. I am presently assigned to the Drug Enforcement Agency (DEA) in the Chattanooga Resident Office (CRO) and have been so assigned since January 2022. I am also a commissioned Special Agent Criminal Investigator of the Tennessee Bureau of Investigation (TBI) and have been so

---

[1] Unless otherwise stated, or the context so requires, this affidavit refers to me when it says "I", "me", or "your affiant."

1

employed since August 2019. As such, I am "an investigative or law enforcement officer of the United States," as defined within Section 2510(7) of Title 18, United States Code.

3. I have completed the TBI Special Agent Academy which included training in constitutional law, communications, intelligence, financial investigations, crime scene investigations, human trafficking investigations, narcotics investigations, and undercover investigations. I am currently assigned to the TBI East Tennessee Drug Investigation Division.

4. Prior to my employment with the TBI, I was a police officer and investigator with the Chattanooga Police Department (CPD) for 6 ½ years. In 2013, I attended the CPD Basic Police Academy, during which I received 800 hours of certified training. Portions of this training included basic narcotics identification and investigations. Since my certification as a Law Enforcement Officer, I have received an additional POST certified training relating to DUI, Sexual Assault, Domestic Violence, Basic Investigations, Field Training Officer, Gang Investigation, and Basic Narcotics Investigations. The last year I was employed by CPD I was an Investigator with the Intelligence Unit. My role within the Intelligence Unit consisted of conducting intelligence gathering to aid in the prevention, investigation, and prosecution of criminals. A great deal of the investigations that I conducted were accomplished with the use of using OSINT "Open-Source Intelligence". I have received specialized training in the use of open-source tools up to and including the use of social media/networking sites.

5. I attended Indiana University and received a Bachelor of Science Degree in Criminal Justice in 2008, where I studied criminal and tort law, corrections, criminal statistics, computer science, crime scene investigation, criminal psychology, and various social studies.

6. I am certified as a Cellebrite Certified Operator (CCO) as well as Cellebrite Certified Physical Analyst (CCPA). I have experience with analyzing and extracting data from various devices that store physical data, have Cloud based storage, and web access.

7. I have participated in overt and covert methods of investigation to include but not limited to undercover operations, search warrant executions, controlled purchases of controlled substances, interview / interrogation, surveillance operations, and Title III surveillance operations. While conducting criminal investigations, I have had the occasion to search residences, businesses, and other areas under the control of individuals who were trafficking controlled substances. I have participated in the execution of numerous search warrants. I have debriefed and interviewed defendants and informants who have extensive knowledge of drug trafficking, drug diversion, and criminal organizations. Through experience and training, I am familiar with the habits, practices, and characteristics of individuals who deal in or traffic in controlled substances, illegal firearms, and their organizations.

8. I have also learned that when controlled substances are illegally used, manufactured, and trafficked in, other supporting items and materials are usually present in addition to the controlled substances themselves. The supporting items commonly associated with the use of, and the trafficking of, controlled substances include but are not limited to drug paraphernalia; scales and packaging materials suitable for particular substance(s); records and notes for controlled substance transactions; money (proceeds) of, or capital for, controlled substance transactions; weapons used to protect the controlled substance(s) or (proceeds); cellular communication device(s)s; electronic devices suitable for use in controlled substance transactions, recordings of such transactions, or electric devices suitable for avoiding law enforcement.

9. Based upon my training and experience, I know that it is customary for those that distribute or traffic in controlled substances to keep a supply of controlled substances on hand to sell to customers. It is also customary for narcotics traffickers to keep narcotics paraphernalia (i.e. baggies, scales, and vials) to package and measure specific purchased quantities of narcotics when needed. Additionally, like ordinary businessmen, in my training and experience, drug traffickers commonly maintain books, records, receipts, notes, ledgers, money orders, photographs, other papers, as well as electronic means of documentation, relating to the transportation, ordering, sale and distribution of controlled substances, in part, because they commonly "front" (provide on consignment) controlled substances to their customers. The aforementioned electronic device(s), books, records, receipts, notes, and ledgers are generally maintained where drug traffickers have ready access to them. Based on my own personal observations, training, and experience, I believe individuals who sell controlled substances are in fact drug traffickers.

10. Through my observations, training, and experience, I know that those that traffic controlled substances will often utilize video surveillance equipment for various purposes to include monitoring their customers, law enforcement presence, and security. I also know that these systems are often monitored directly through a hard connection on site, but can also be monitored remotely utilizing computers or cellular devices that have access to the software/applications or web browsing capabilities.

11. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

12. The property to be searched is a 4CH 1080n 5in1 XVR S/N: K3043HV190143, hereinafter the "Device." The Device is currently located at the HAMILTON COUNTY SHERIFF'S OFFICE, 6233 DAYTON BLVD, HIXSON, TN.

13. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

14. On December 21, 2021, deputies with the Hamilton County Sheriff's Office (HCSO) attempted to conduct a traffic stop on a light-colored Dodge Charger and black Cadillac ATS after observing the vehicles travelling together in a suspicious manner in the area of Highway 27 in Soddy Daisy, Tennessee. The Dodge Charger fled the area, refusing to stop after deputies had initiated emergency equipment. Deputies reported that as the Dodge Charger completed a U-Turn to evade law enforcement, the white male driver of the vehicle threw what appeared to be a large amount of suspected narcotics out of the window in the 9800 block of Dayton Pike, Soddy Daisy, Tennessee. Upon further investigation, deputies located a substantial amount of a crystal substance (approximately 678 grams) consistent with methamphetamine, and a white powder (approximately 10 grams) consistent with cocaine, on the ground where the driver of the Dodge Charger had thrown it out of the window. Agents later identified the driver of the Dodge Charger as Joshua Taylor EAKER. The black Cadillac ATS (TN 00AA40) stopped in same area of the 9800 block of Dayton Pike, Soddy Daisy, Tennessee. The driver, and sole occupant of the black Cadillac ATS, was identified as Henry Lee ESTILL (ESTILL). HCSO deputies detained ESTILL, and observed in plain view, on the floorboard of the vehicle, approximately 10 grams of a crystal substance consistent with methamphetamine. A subsequent

5

search of the vehicle by HCSO deputies revealed an electronic money counting machine in the passenger seat commonly associated with large transactions of proceeds from narcotics sales. ESTILL also advised deputies that he knew the driver of the Dodge Charger and was travelling with him as deputies had suspected. ESTILL also told deputies the black Cadillac ATS he was operating belonged to the girlfriend of the driver of the Dodge Charger.

15. On February 19, 2022, HCSO deputies responded to a disorder with weapon and shots fired at the residence of ESTILL located at 2045 Oak Street, Signal Mountain, Tennessee in Hamilton County. On scene witnesses identified the suspect as ESTILL, who was then located inside an outbuilding on the same property and taken into custody.

16. I, and DEA agents, arrived on scene and spoke to a witness on scene, Henry James Estill (Mr. Estill), who advised his son, ESTILL, lived at that address and had a bedroom upstairs. Mr. Estill also indicated all of the surveillance cameras observed on the property belonged to his son.

17. I then spoke with a second witness, Aldo Del Rosario, who was located in the same outbuilding as ESTILL. Mr. Del Rosario stated he resides in the outbuilding on the property. Mr. Del Rosario stated he had access to all of the surveillance cameras that were connected to the outbuilding. Mr. Del Rosario then showed me surveillance footage from an application on his cellular device, showing ESTILL exiting the main house, firing several rounds from a handgun, then re-entering the residence holding the firearm. The surveillance footage then showed ESTILL exiting the main residence carrying a backpack and walking to the outbuilding. Mr. Del Rosario stated ESTILL then entered the outbuilding and remained there until law enforcement arrived on scene and located him inside.

18. I then spoke with a third witness, Lori Clark, who also resides in the outbuilding with Mr. Del Rosario. Ms. Clark told me that she heard the shots fired then went into the main house to make sure no one was hurt. Ms. Clark said she told ESTILL to come back to the outbuilding with her. The statements made by Ms. Clark were verified by the video surveillance footage provided by Mr. Del Rosario.

19. I and HCSO deputies observed drug paraphernalia around the property and inside the outbuilding where Del Rosario and ESTILL had been located.

20. DEA Agents had also conducted a controlled buy of methamphetamine, utilizing a confidential source, from ESTILL at the same residence within the 30 days prior to the execution of the search warrant.

21. On February 19, 2022, DEA TFO Ben Johnson applied for and was granted a search warrant for the property and residence of ESTILL located at 2045 Oak Street, Signal Mountain, Tennessee in Hamilton County. The search warrant was immediately served by agents with the TBI and HCSO deputies.

22. During the search of the residence and property located at 2045 Oak Street, HCSO deputies and agents discovered various forms of narcotics paraphernalia indicative of the distribution of narcotics, and recovered/seized over 2,350 gross grams of suspected methamphetamine, over 210 gross grams of suspected heroin/fentanyl in rock/chunk form, over 150 gross grams of suspected heroin/fentanyl in powder form, approximately 39.3 gross grams of suspected mushrooms, multiple firearms, and video surveillance equipment. Witnesses on scene told deputies and agents the narcotics and firearms recovered belonged to ESTILL.

23. ESTILL is a convicted felon and prohibited possessor, who has an extensive criminal history, to include narcotics offenses such as Possession of Methamphetamine with

7

Intent to Manufacture, Delivery, or Sale in December 2021 and also similar charges in 2016 for which he served time in the Tennessee Department of Corrections.

24. Based upon the facts known and previously described, there is probable cause to believe that evidence pertaining to the incident that occurred on February 19, 2022, as well as the sale of narcotics and its ongoing investigation may be located within video surveillance equipment and device(s) seized from ESTILL at 2045 Oak Street, Signal Mountain, Tennessee, Hamilton County, Tennessee, and currently in the possession of the HCSO.

25. The Device is currently in the lawful possession of the HCSO. It came into the HCSO's possession in the following way: seized during the execution of a warrant executed at the residence of ESTILL located at 2045 Oak Street, Signal Mountain, Tennessee, on February 19, 2022. Therefore, while the HCSO might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

26. The Device is currently in storage at the HAMILTON COUNTY SHERIFF'S OFFICE, 6233 DAYTON BLVD, HIXSON, TN. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the HCSO.

## TECHNICAL TERMS

27. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Digital Video Recorder (DVR): records video to local storage devices, most commonly a hard drive. DVR can record analog video sources on-site or capture

8

video from a digital source. DVRs can be connected to analog cameras via coaxial cables, enabling them to be accessed remotely. DVR is an electronic device that often assists the CCTV security camera systems. They allow the recording of security footage enabling convenient playback. DVRs support direct streaming of high-definition video with easy connection to PCs and laptops, as well as cloud-based servers.

28. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a DVR. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who had access to, possessed, or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

29. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

30. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

9

Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

31. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including, but not limited to, computer-assisted scans of the entire medium that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

32.  *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

33.  I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR SEALING

34.  It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

11

Respectfully submitted,

[signature: Sandoval]

Ayriel Novak
Task Force Officer
Drug Enforcement Agency

Subscribed and sworn to before me
on March 24, 2022:

[signature]

Hon. Susan K. Lee
UNITED STATES MAGISTRATE JUDGE

12

Case 1:22-mj-00089-SKL   Document 1   Filed 03/24/22   Page 16 of 19   PageID #: 16

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF 4CH 1080n 5in1 XVR S/N: K3043HV190143, CURRENTLY LOCATED AT HAMILTON COUNTY SHERIFF'S OFFICE, 6233 DAYTON BLVD, HIXSON, TN | Case No. 1:22-MJ-89<br><br>Filed Under Seal |

## ATTACHMENT A

1. The property to be searched is a 4CH 1080n 5in1 XVR S/N: K3043HV190143, hereinafter the "Device." The Device is currently located at the HAMILTON COUNTY SHERIFF'S OFFICE, 6233 DAYTON BLVD, HIXSON, TN.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF 4CH 1080n 5in1 XVR S/N: K3043HV190143, CURRENTLY LOCATED AT HAMILTON COUNTY SHERIFF'S OFFICE, 6233 DAYTON BLVD, HIXSON, TN | Case No. 1:22-MJ- 89<br><br>Filed Under Seal |

## ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of 21 U.S.C. Section 841 – Possession with intent to distribute a controlled substance, 21 U.S.C. Section 846 – Conspiracy to possess with intent to distribute a controlled substance, 18 U.S.C. Section 922 – Possession of a firearm by a convicted felon, and 18 U.S.C. Section 924 – Possession of a firearm in furtherance of a violent crime or drug trafficking crime, and involve **Henry Lee ESTILL** since December 1, 2021, including:

   a. identification of customers, associates, and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. any information regarding Henry Lee ESTILL's schedule or travel from December 1, 2021, to the present;

1

2. Evidence of user attribution showing who used, had access to, or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, recordings, saved usernames and passwords, IP address, and storage database;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any video or photographic form.